UNITED STATES *v.* SMALL.

*(Circuit Court, E. D. Virginia. March 2, 1889.)*

ELECTIONS AND VOTERS—ARREST OF VOTERS AT POLLS.
   There is no law authorizing the arrest of a person while offering his ballot at the polls, for any cause relating to his right of suffrage.

Indictment against C. C. Small for unlawfully preventing a qualified voter from exercising his right of suffrage.

*J. C. Gibson*, U. S. Atty., and *Whitehurst & Hughes*, special assistants, for the United States.

*R. C. Marshall* and *John W. Happer*, for defendant.

HUGHES, J., (*charging jury.*) The indictment which we are trying charges, among other things, that the defendant, C. C. Small, judge of election at the polls of the Third ward of the city of Portsmouth, did, at the election of a member of congress held on the 6th day of November last, by force, unlawfully prevent a qualified voter, William H. Johnson, from freely exercising the right of suffrage in that election. The evidence shows that the "force" exercised by Small was his ordering the arrest of William H. Johnson while offering to vote, and directing his abduction from the polls. The case is important in only one of its features, namely, in the fact of the arrest of a citizen at the polls while offering his vote, for some cause relating to his right of suffrage.

The defendant himself testified that he ordered the arrest of Johnson while standing at the polls offering to vote, because of a matter relating to his suffrage. Stripping the case of all other circumstances,—leaving out of consideration the cumulative charges usually inserted in indictments to meet supposed features of the evidence yet unknown to the pleader,—I shall confine myself in what I shall say to this prominent

feature of this case. Our statute-books, state and national, will be searched in vain for a law authorizing the arrest of a person offering to vote for any matter connected with his suffrage while at the polls, offering his ballot. The laws are careful and minute in provisions designed to protect the citizen in the exercise of this high privilege. But they contain no clause authorizing his arrest at the polls, and imprisonment for offering to vote. If they did contain provisions susceptible of such an interpretation by the Dogberrys of the hustings, the courts would, by construction, erase them from the statute-book, and declare them unconstitutional, null, and void, as infringing the fundamental right of the citizen to cast his vote free from all fear for his liberty and safety. I may add that the law takes great pains to provide that the vote shall be promptly received when offered on election day. The object of registration—which is given for several days at a time at several periods of the year—is to ascertain who are legally entitled to the elective franchise, to record the facts of their identity, and to fix the precincts at which they are to vote. The object of registration is to remove all necessity for delay in receiving the votes, and polling them promptly on election day. The law does not intend that the judges of election shall consume time with frivolous interrogations, and obstruct the course of voting by inquiries which have already been made and settled by the registrars. True, section 127 of the Code of Virginia, in force since May 1, 1888, authorizes the judges to challenge on suspicion, and to hear challenges, to tender the voter's oath as a means of saving time, and even to reject a vote on their own personal knowledge or on legal proof that the person offering has not the right of suffrage; but it contemplates in all these provisions that the inquiry shall be speedy and summary. Its object is to secure expedition, and by proceedings before registrars to relieve the judges of election of all inquiries except as to the identity of the person offering his ballot with the person registered. So that the judge of election who goes beyond this inquiry into matters settled by registration, himself obstructs the election with which he is charged, and which he is sworn to conduct according to law. The law also takes great pains to secure quiet and order at the polls, and orders the prompt arrest of persons conducting themselves in a noisy, riotous, tumultuous, or insulting manner at or about the polls. It does these things for the protection of the voter and of the ballot-box. All its provisions of this character are intended, directly or indirectly, to secure to the voter the right freely and securely to cast his ballot without fear or intimidation. It nowhere authorizes the arrest of the citizen offering his ballot. If he votes fraudulently, if he falsely swears when put upon the voter's oath, he may be arrested afterwards at another time and place, and, if found guilty, may be punished. His vote may at another time and place be excluded from computation, or it may be rejected by the judges at the time it is offered. But at the polls, claiming and offering his ballot, his right to be there for the purpose of voting is sacred, and his person inviolable. The law hedges him around on election day with all the protection which it can give to secure him in the free and fearless exercise of the highest priv-

ilege of the American citizen. To arrest him in the exercise, or attempt to exercise, this privilege, goes much farther than his own case. The loss of one vote is not the only effect of the arrest. It produces widespread and general fear and trepidation among the whole class of poor and friendless voters, of which he is but one. If the officers charged with the duty of receiving the ballots of citizens could legally arrest them in the act of offering the suffrage, intimidation would become epidemic, the infection would be general, and the suffrage would be a curse instead of blessing to the humble workers of the country The elective franchise is the basis and safe-guard of republican institutions. It is that which distinguishes the American citizen from the serf and peasant of Europe, who dare not stand erect, and look the privileged classes in the face. There the man is drafted into the army, and the woman may often be seen working, in the field, yoked beside an ox, or a goat, or even a dog, in tilling the soil. The ballot, in the hands of the working classes, is our protection from the condition of things presented in the old countries. The ballot is of little value to the powerful and strong. The most of them—drones of society—can protect their rights by other means. But the workers in the hive have no protection comparable in value and efficiency to the ballot. And when, by any means, especially that of arresting the obscure and friendless citizen in offering his vote on election day, the free and fearless use of the ballot is destroyed, our country will be already on the highway which leads to the ruin of republican institutions. The protection of this right is the duty of the courts and juries of our country. This court and its officers have done their duty in this case, and it only remains for you to do yours.

I must not omit to say that, although the arrest of William H. Johnson at the polls was illegal, whether he was a qualified voter or not, yet, under the wording of the indictment, the defendant cannot be found guilty, unless Johnson was a qualified voter. On this point it was shown in evidence that he was duly registered in 1884, and that he had voted unchallenged in each and every election since that registration. When his vote was challenged at the election of the 6th of November last, the fact of his registration and subsequent voting established the presumption that he was a legal voter, and this presumption could not have been disregarded by the judges of election, unless the requirements of section 127 of the Virginia Code were first complied with. It was their duty under that section, before they could reject his ballot, first, to administer the voter's oath, which he demanded to take. Not until after he had taken that oath could they have had any legal right to reject his ballot, and even then they could not reject it except upon record, or legal proof, or their own personal knowledge of his incompetency The evidence shows that they did not administer the voter's oath to him, and their rejection of his ballot was for that reason alone illegal and null. Under these circumstances he must be presumed to have been a qualified voter, and it is your duty so to assume.

The evidence shows that a placard was put up in the election room showing the instances in which persons of the same or similar names

were registered in different precincts of that part of the country. This placard gave the name of one William Johnson as registered in the precinct next to the Third ward of Portsmouth. It was contended by counsel that this showing of the placard, supported by a challenge from outside the room, constituted, under some peculiar provision of the Code of Virginia, a criminal complaint against William H. Johnson, and justified his arrest and abduction from the polls. If that were so, the jails of Virginia on election days would be filled with Johnsons, Browns, Smiths, Joneses, Marshalls, Washingtons, Jeffersons, and Madisons. If that were so, it would be incumbent on all of us who bear names like those of persons in other precincts to march to the jails to be locked up on election days, instead of repairing to the polls to exercise the highest right of freemen. And I could not help feeling that the intelligence of the jury and the court were not much flattered by the urging of such a pretension upon them. No, gentlemen, there can be no legal arrest of a voter on election day for any cause relating to his suffrage. In the temple of the republic the place on which citizens stand in casting their votes is sacred ground, and the ballot-box is an altar before which their persons and liberty are inviolable.

In this case, I leave out of consideration all other evidence and all other features except the one which gives it importance,—the arrest of a voter at the polls in the manner shown in this case. It is charged that the defendant at the bar, by force, unlawfully prevented the voter, William H. Johnson, from freely exercising his right of suffrage, and the evidence is that this force was exercised by ordering the voter's arrest at the polls, and his abduction from the voting place. I charge you, gentlemen, that this arrest and abduction were unlawful, and turn the case over to you.